## The Wabash Railroad Company

### *v.*

## The People of the State of Illinois.

*Filed at Springfield October 27, 1893.*

1.  School law — *statute construed — levy of taxes — on what year's valuation.* Section 1 of article 8 of the revised School law of 1889 authorizes the levy of a school tax for the support of schools, not to exceed two per cent on all the taxable property of school districts, "the valuation to be ascertained by the last assessment for State and county taxes." The "last assessment" means the assessment for the current year, and not that of the preceding year, so that a school tax levied in 1891 must be based on the assessment of property for that year, and not for the year 1890.

2.  School taxes are required to be computed and extended upon the valuation and assessment of property, for purposes of taxation, for the current and not for the previous year. The extension of the school tax on the tax books is made at the same time that the other taxes are levied and extended, and that is not until after the assessment of property for the current year has been made and has been equalized by the State board.

3.  The estimate by the school directors of the amount of money to be raised by taxation for school purposes is intended to be based upon the needs and requirements of the district in the maintenance of its schools. If such estimate happens to exceed two per cent of the equalized assessment, only the two per cent can be levied and extended on the tax books, and the excess must be abated.

4.  At the time when the rate per cent is to be ascertained and fixed by the county clerk and the tax extended on the tax books, the assessment for the current year will be completed, and "the last assessment for State and county taxes" is then the current assessment.

APPEAL from the County Court of Montgomery county; the Hon. GEORGE R. COOPER, Judge, presiding.

Mr. GEORGE B. BURNETT, and Mr. GEORGE S. GROVER, for the appellant:

By section 69, chapter 120, of the Revised Statutes of 1891, page 1243, it is made the duty of the county clerk to have the assessment books ready by the first of May, annually. The values thus assessed are equalized by the county boards in July, (chap. 120, sec. 121, p. 1250,) and by the State board in August. Chap. 120, sec. 105, p. 1252.

The rates for county purposes are determined by the county board in September. Chap. 120, sec. 121, p. 1250.

When this work is completed, as it usually is, in October, the result is certified by the county clerk. He is also required to make out a tax book annually, in which are extended, in separate columns, the rates for State, etc., and all other taxes for that year, upon the values equalized by the State and county boards of equalization. Chap. 120, secs. 123-128, p. 1257.

The book so prepared by the county clerk must be delivered by him to the collector on or before December 20, annually. Chap. 120, sec. 135, p. 1259.

The delinquent taxes are not advertised until the ensuing April, (chap. 120, sec. 182, p. 1270,) while a judgment is not rendered against the property until May. Chap. 120, secs. 185, 191, pp. 1271, 1274.

Turning now to the School law, we find that the rate for educational purposes is limited to two per cent, the valuation to be ascertained by the last assessment for State and county taxes. Chap. 122, sec. 204, p. 1410; *Thatcher* v. *People*, 93 Ill. 240; *Lawrence* v. *Traner*, 136 id. 474.

A certificate showing the amount required must be filed with the township treasurer on or before the first Tuesday in August, annually.

Mr. THOMAS M. JETT, for the appellees:

It is insisted by appellant that the levy should have been made on the basis of the equalized assessment for the year 1891. This would be impossible, and obey the law, for the following cogent reasons:

A certificate showing the amount required to be raised by special tax for school purposes must be filed with the township treasurer on or before the first Tuesday in August, annually, and said certificate shall be returned to the county clerk on or before the second Monday of August, annually. Rev. Stat. 1891, chap. 122, secs. 205, 206, p. 1410.

The county board does not meet to determine the amount of all taxes to be raised for county purposes until in September of each year, and the work is rarely ever completed until in October. Chap. 120, sec. 121, p. 1250.

Again, the State board of equalization does not meet to equalize the assessments, etc., until the second Tuesday in the month of August, annually. Chap. 120, sec. 105, p. 1252.

Now, in this case, on what basis could this levy, which must be made on or before the first Tuesday in August, annually, have been made, except on the last equalized assessment of 1890?

In the case of *Thatcher* v. *People*, 93 Ill. 240, the court virtually decides that the levy in a certain school district for school purposes should be made upon the then last equalized assessment, meaning, I take it, on the last equalized assessment that was made previously to the making of the levy, which, in the case at bar, would mean that the levy required to be made on or before the first Tuesday in August, 1891, for school purposes, would necessarily have to be made on the then last equalized assessment, which would be that of 1890.

Mr. JUSTICE BAILEY delivered the opinion of the Court:

This was an application to the County Court of Montgomery county, by the county collector, for judgment against the property of the Wabash Railroad Company, for a part of the school tax levied against that company for the year 1891, in the city of Litchfield, and in district number 4, township 11, range 4. The objections filed by the railroad company to the entry of judgment were, in substance, that the taxes levied in Litchfield and in district number 4, for school purposes, for that year, exceeded two per cent of the valuation of the taxable property therein, as ascertained by the assessment for State and county taxes for the year 1891, and that the taxes for school purposes for that year levied upon the objector's taxable property in those districts exceeded two per cent of the valuation thereof, as shown by such assessment. All of the objector's school taxes, except the alleged excess over two per cent of the valuation of its taxable property, seem to have been paid, and the only controversy is as to such excess.

The evidence offered on behalf of the objector showed, that the total assessed value of the taxable property of the city of Litchfield as shown by the assessment for State and county taxes for the year 1891, was $555,800, and that the school taxes levied for school purposes in the city for that year were $14,000 in all; also that the valuation of the objector's taxable property in the city, as shown by the same assessment, was $24,400, and that the school taxes levied thereon amounted to $622.20. The evidence also shows that the total valuation of the taxable property in district number 4, as shown by the same assessment, was $32,381, and the total school tax levied $764.39; that the total valuation of the objector's property in the district, as shown by the same assessment, was $5611, and the school taxes levied thereon $134.66.

The county collector, on the other hand, read in evidence the valuation of the taxable property in those districts, as

shown by the assessment for the year 1890 for State and county taxes, and it is conceded that the school taxes in question are not in excess of two per cent of that valuation. The question then is, whether the taxes for school purposes for the year 1891 should have been levied upon the valuation of property as ascertained by the assessment of 1891 or of 1890. If the latter, the taxes in question, as is admitted, are within the statutory limit and are valid, but if the former, they are in excess of that limit, and are void to the extent of such excess.

The determination of this question necessarily depends upon the proper construction to be placed upon the statutes providing for and regulating the levy and assessment of taxes for school purposes. Section 1, of article 8, of the Revised School Law of 1889, provides that for the purpose of establishing and supporting free schools, for not less than five nor more than nine months in each year, and defraying all expenses of the same, and for the purpose of repairing and improving school houses, procuring furniture, fuel, libraries and apparatus, and for all other necessary incidental expenses in each district, village or city, the directors of the district and the authorities of the village or city, shall be authorized to levy a tax annually upon all the taxable property of the district, village or city, not to exceed two per cent for educational, and three per cent for building purposes, "*the valuation to be ascertained by the last assessment for State and county taxes.*" 3 Starr & Cur. Stat. 1194.

What is the last assessment for State and county taxes within the meaning of this section? Is it the assessment for the current year, which, at the time the first step in the matter of levying the school tax is required to be taken is still incomplete, or is it the assessment made for State and county taxes for the preceding year? It must be confessed that the language of the above section in this respect is not perfectly clear, still, when considered in the light of other provisions of

the same statute, we are of the opinion that there is very little if any difficulty.

Section 2, of article 8, requires the directors of each school district to ascertain, as nearly as practicable, annually, how much money must be raised by special tax for school purposes during the ensuing year, and to certify and return the amount to the township treasurer, on or before the first Tuesday in August, annually. Section 3 makes it the duty of the township treasurer to return such certificate to the county clerk on or before the second Monday of August.

The duty of the county clerk in the matter of computing and extending the tax on the tax books, and the time and manner of its performance, are prescribed by sections 4 and 5. Section 4, as amended by an act approved May 21, 1891, and in force July 1, 1891, relates primarily to cases of districts lying in two or more counties, and after requiring the directors, in such districts, to ascertain, as nearly as practicable, the amount of tax to be raised for school purposes, and to prepare a certificate of such amount for each county in which the district lies, and requiring the township treasurer who receives the tax money for the district to return one of the certificates to the county clerk of each county, it provides that, on or before the first Monday of October, or as soon thereafter as practicable, annually, the county clerk of each county shall ascertain the total equalized valuation of all taxable property in that part of the district lying in the county, and certify the amount thereof to the county clerk of each of the other counties in which the district lies, and from the aggregate amount of such equalized valuation, and from the certificate of the amount required to be levied, the clerks are directed to ascertain the rate per cent required to produce the amount of the levy, and to extend the tax at that rate in the part of the district lying within their respective counties. Section 5 provides as follows:

"According to the amount certified, as aforesaid, the county clerk, when making out the tax books for the collector, shall compute each taxable person's tax, in said district, upon the total amount of taxable property, *as equalized by the State board of equalization for that year*, lying and being in said district, whether belonging to residents or non-residents, and also each and every tract of land assessed by the assessor, which lies, or the largest part of which lies, in said district." 3 Starr & Cur. Stat. 1196.

From all these provisions, and especially from the language of the section last quoted, it seems to be very clear that school taxes are required to be computed and extended upon the valuation and assessment of property for purposes of taxation for the current and not for the previous year. The extension of the school tax on the tax books is to be made at the same time that the other taxes are levied and extended, and that is not until after the assessment of property for the current year has been made, and has been equalized by the State board, and the computation is expressly required to be based, as are the State and county taxes, upon the valuation of taxable property "as equalized by the State board for that year."

But the position assumed by the counsel for the people seems to be, that even though this may be so, the "last assessment" referred to in section 1 must still be held to be the equalized assessment of the preceding year, and that two per cent upon that assessment may be levied, even though it may result in the levy of more than two per cent of the valuation as shown by the assessment for the current year. This contention is based upon what are assumed to be difficulties in the way of complying with the law upon any other theory. The difficulties referred to, if we clearly comprehend what counsel mean, grow out of the fact that the school directors are required to ascertain, as nearly as practicable, the amount of money to be raised by taxation for school purposes in their respective districts, and certify their estimate to the township

treasurer on or before the first Tuesday in August in each year, while the State board of equalization does not meet until the second Tuesday of the same month, and does not ordinarily complete its equalization until a month or two later.

If the directors, in order to the proper performance of the duty imposed upon them by section 2, that is, to ascertain, as nearly as practicable, the amount of money which must be raised by taxation for school purposes for the year, must necessarily and as an indispensable prerequisite, be able to ascertain the highest amount that can be legally levied, so as to be able to place their estimate at that figure, the difficulty supposed would probably exist. But that manifestly is not the theory upon which the Legislature intended that the estimate should be made. That intention doubtless was, that it should be based upon the needs and requirements of the district in the maintenance of its schools, and those matters are as well known to the directors before the equalization of the assessment as afterwards. If the estimate of the directors should happen to exceed two per cent of the equalized assessment, the only result would be, that only the two per cent could be levied and extended on the tax books, and that the excess would have to be abated.

It should be noted that, under the provisions of the Revenue Law, the assessment of property for the current year for State and county taxation, is made by the local assessors, and is reviewed by the town and county boards, before the date at which the school directors are required to certify to the township treasurer their estimate of the amount of school taxes to be raised in their respective districts, and before the rate per cent of taxation for school purposes has to be computed and determined by the county clerk, the equalization of the assessment by the State board of equalization is completed. At the time then that the rate per cent has to be ascertained and fixed by the clerk, and the tax extended on the tax books, the assessment for the current year has been completed, and the

last assessment for State and county taxes is then the current assessment.

In this case, the County Court sustained the entire tax assessed against the property of the objector, although in excess of two per cent of its valuation as ascertained by the assessment for the current year, and rendered judgment against the objector for the excess which the objector had refused to pay. That judgment is erroneous, and it will be reversed, and the cause will be remanded to the County Court with directions to render a judgment in favor of the objector.

*Judgment reversed.*