(No. 15220.—Judgment reversed.)
ELIZABETH GRAHAM, Appellee, *vs.* WILLIAM V. DYE,
Appellant.

*Opinion filed April 18, 1923—Rehearing denied June 7, 1923.*

1. CONSTITUTIONAL LAW—*meaning of constitution must be determined from its language.* The intent and meaning of the constitution are to be determined from the language used in its provisions, and when the words used have a definite meaning it is not allowable to resort to subtle or forced construction for the purpose of limiting or extending their meaning and effect.

2. SAME—*an emergency statute must state what constitutes the emergency.* The provision of section 13 of article 4 of the constitution that when an act is to take effect as an emergency statute the "emergency shall be expressed in the preamble or body of the act" must be construed to require that there shall be stated in the preamble or body of the act facts which create the emergency, and it is not sufficient merely to state that an emergency exists.

3. STARE DECISIS—*when the decisions of courts construing other constitutions may be referred to.* The decisions of courts of other States construing constitutional provisions of such States are of less importance as precedents than their decisions on other questions, but Illinois courts, in construing similar provisions in the Illinois constitution, may properly consider them.

4. SECURITIES—*emergency clause of Securities act of 1919 is invalid.* The emergency clause of the Securities act of June 10, 1919, is invalid in that it does not state what constitutes the emergency, and the act did not, therefore, go into effect until July 1 following its passage.

APPEAL from the City Court of Kewanee; the Hon.
H. STERLING POMEROY, Judge, presiding.

JOHN W. FLING, JR., SIGMUND LIVINGSTON, and STURTZ
& EWAN, for appellant.

F. B. BRIAN, T. W. HOOPES, and JAMES H. ANDREWS,
for appellee.

Mr. JUSTICE FARMER delivered the opinion of the court:

This was an action of assumpsit brought by appellee to recover of appellant $7500 paid by appellee for stock of the Illinois Tractor Company to appellant, who it is alleged made the sale to appellee as agent of the tractor corporation. The declaration is based on the Illinois Securities act of 1919, and alleges that said stock was not a security mentioned in class A, B or C in said act but was securities described in class D; that the tractor corporation was licensed February 24, 1919, to sell securities in class D, but that license was canceled and revoked June 10, 1919, by the legislature, and at the time of the sale of the stock to appellee, which was June 27, 1919, the sale of stock of the tractor company was not authorized by the law of June 10, 1919. The declaration alleges appellant well knew the sale was made in violation of the statute and appellee did not know the corporation had not qualified its stock under the act of June 10, and that when she learned that fact she tendered the stock back to appellant and demanded a return of the money she paid for it. Appellant refused to return the money, and the suit was brought to recover the amount paid for the stock, with interest and attorney's fees. Appellant pleaded the general issue and filed notice of special matters of defense. Among other defenses set up in the notice, it was alleged that February 24, 1919, the corporation which issued the stock was duly licensed by the State to sell the stock as class D securities; that the license was in full force and effect until July 1, 1919; that the Securities act of 1919 did not go into effect until July 1 of that year for the reason the emergency clause was unconstitutional in that it contained no statement of what the emergency was, either in the preamble or body of the act, as required by section 13 of article 4 of the constitution. A trial was had by jury, and a verdict was returned in favor of appellee for $7365 and $600 for attorney's fees. The

court overruled motions for a new trial and in arrest of judgment and rendered judgment for appellee on the verdict for $7965. This appeal is prosecuted direct to this court, a constitutional question being involved.

While other questions are raised and discussed it will be unnecessary to consider them if the constitutional question is decided in favor of appellant.

The suit and the judgment are based on the theory that the Securities act of 1919 went into effect June 10 of that year and was in force at the time the stock was sold to appellee, June 27. A securities act commonly known as a "Blue Sky law" was passed by the General Assembly in 1917, which forbade the sale of stocks and securities not exempt under the act without being licensed to sell them by the Secretary of State. Persons desiring to sell such securities were required to comply with the requirements of the act before they could receive a license to sell securities. In 1919 the General Assembly passed a more elaborate and more drastic act, which repealed and superseded the act of 1917. It divided securities into classes A, B, C and D and defined each. Class D was defined as securities based on prospective income. The stock of the Illinois Tractor Company was class D securities. The act made it unlawful to sell such securities without first having complied with its provisions and requirements. Section 37 as enacted in 1919 was as follows: "Every sale and contract of sale made in violation of any of the provisions of this act shall be void and the seller of the securities so sold and each and every solicitor, agent or broker of or for such seller, who shall have knowingly performed any act or in any way furthered such sale, shall be jointly and severally liable, upon tender to the seller or in court of the securities sold, to the purchaser for the amount paid, together with his reasonable attorney's fees in any action brought to recover such amount." The act of 1919 was approved June 10, and the last section is: "Whereas, an emergency exists, therefore this act shall be

in force and effect from and after its passage and approval."
It is appellant's contention that to constitute a valid emer-
gency act which will go into effect immediately upon its
passage and approval the constitution requires a statement
in the preamble or body of the act of what the emergency
is, and that the mere statement that an emergency exists
is not a compliance with the constitution and such an act
does not go into effect until the first day of July after its
passage.

Section 13 of article 4 of the constitution of 1870 is
as follows: "And no act of the General Assembly shall
take effect until the first day of July next after its passage,
unless, in case of emergency, (which emergency shall be
expressed in the preamble or body of the act,) the General
Assembly shall, by a vote of two-thirds of all the members
elected to each house, otherwise direct."

The constitutional question presented for determination
in this case has not heretofore been considered by this court.
The precise question presented is whether the constitutional
requirement is complied with so that an act passed as an
emergency act will take effect immediately on its approval
if it is merely stated in the act that an emergency exists.
The constitution provides that no act shall take effect until
the first day of July next after its passage "unless in case
of emergency, which emergency shall be expressed in the
preamble or body of the act." Does the mere declaration
in the act that an emergency exists comply with the re-
quirement of the constitution that the emergency shall be
expressed in the body of the act? The intent and meaning
of the constitution are to be determined from the language
used in its provisions. We said in *People* v. *Stevenson,*
281 Ill. 17: "As a constitution is dependent upon adoption
by the people, the language used will be understood in the
sense most obvious to the common understanding. The
language and words of a constitution, unless they be tech-
nical words and phrases, will be given effect according to

their usual and ordinary signification, and courts will not disregard the plain and ordinary meaning of the words used, to search for some other conjectural intention." In *City of Beardstown* v. *City of Virginia,* 76 Ill. 34, the court said, in the construction of the meaning of constitutional provisions the intent is determined from the meaning of the words used, and that when words have a definite meaning it is not allowable to go elsewhere in search of conjecture or resort to subtle or forced construction for the purpose of limiting or extending their meaning and effect.

The language of section 13 of article 4 is not that an act passed by the necessary two-thirds vote will take effect upon its approval if it is declared therein that an emergency exists, but the language is that no act shall take effect until the first day of July next after its passage unless in case of emergency, "which emergency shall be expressed in the preamble or body of the act." The meaning of that language seems plain, and it seems obvious that the reasonable understanding of it could not be otherwise than that there should be stated in the preamble or body of the act facts which created the emergency and made it important that the statute take effect immediately upon its being approved. The constitution does not authorize the passage of an emergency statute except in case an emergency exists making it important, if not absolutely necessary to accomplish the full purpose of its enactment, that it take effect immediately upon its approval, and by plain language requires the expression of what the emergency is in the preamble or body of the act. To say the mere declaration that an emergency exists fulfills the requirement of the constitution would be a plain disregard of the language that the emergency shall be expressed in the preamble or body of the act. The statement that an emergency exists is not an expression of the emergency.

That the constitution of 1870 requires the expression or statement of the emergency in the preamble or body of the

act is made evident by comparing the provision referred to with the provision of the constitution of 1848 on the same subject. Section 23 of article 3 of the constitution of 1848 is as follows: "And no public act of the General Assembly shall take effect or be in force until the expiration of sixty days from the end of the session at which the same may be passed, unless in case of emergency the General Assembly shall otherwise direct." Under the constitution of 1848 the legislature was authorized, in case of emergency, to direct that an act take effect at once. What the emergency was, was not required to be expressed in the act. In *Wheeler* v. *Chubbuck,* 16 Ill. 361, the court considered an act approved January 27, 1853, which made it unlawful after March 1 next for sheep to run at large in certain counties named. There was no direction in the act that it should take effect upon approval. The court held that under the constitution of 1848 the General Assembly was the sole judge of the emergency which would induce it to anticipate the constitutional period when a law should go into operation, but said the direction that the statute should go into effect at once was required to be made in a clear, distinct and unequivocal provision. As the statute contained no such provision the court held it did not take effect as an emergency act. Our present constitution is entirely different. It authorizes the General Assembly, in case of an emergency, by two-thirds vote of all the members elected, to pass an act which will take effect on approval, but it requires the emergency to be expressed in the act. The constitution of 1848 did not require that the emergency be expressed in the act and did not expressly require that it even be stated that an emergency existed. In case of an emergency the legislature was authorized to direct that the act take effect upon approval, and if the legislature in clear and unequivocal language directed that the act take effect at once it was sufficient. Under that constitution the legislature was the judge of the emer-

gency but was not required to state what it was. Under our present constitution the legislature is the judge of what facts or conditions create an emergency, but it is required to express in the act what the emergency is. If the present constitution requires the emergency to be expressed in the act it was to be complied with by the legislature in passing an emergency statute. Neither that body nor the courts can say the constitutional requirement can be disregarded. We said in *Neiberger* v. *McCullough*, 253 Ill. 312: "No bill can become a law except in the mode prescribed by the constitution, and the power and duty to decide whether a bill has become a law resides in the courts." It was said in *Hills* v. *City of Chicago*, 60 Ill. 86, if courts set the pernicious example of frittering away, by construction, the plain prohibition of the constitution, even though the prohibition may not seemingly be of the greatest importance, the constitution would be of little value, for if one provision may be evaded or abrogated there is no security that others may not be.

Appellee asserts that for more than half a century the legislative and executive departments of the State have assumed that a statement in an act that an emergency existed was a compliance with the constitution, and that will be given great weight in construing the constitution. Counsel assert the belief that since the adoption of the present constitution no emergency statute has been passed in which what constituted the emergency was stated. In this counsel are in error. It is true, many acts have been passed which did not express the cause of the emergency but merely contained the statement that an emergency existed, but it is also true that a great many acts passed as emergency statutes did contain a statement of what the emergency was. According to a tabulation furnished in the reply brief of appellant, acts expressing what the emergency was have been passed at practically every session of the legislature since the adoption of the constitution. Because of the time

it would require we have not verified the correctness of the tables in their entirety but have spent some time in trying to ascertain their correctness, and so far as we have examined them they are substantially correct. It appears that at the first three sessions of the legislature after 1870 every emergency statute passed contained a statement of what the emergency was. The first act which did not contain such statement was passed by the General Assembly on May 25, 1877. Since that time acts have been passed, we believe, at every session which contained no expression of what the emergency was but numerous acts have been passed which stated what caused the emergency, and that has continued down to the 1921 session of the General Assembly. It is apparent, therefore, that even if the language of the constitution were ambiguous or doubtful, the doctrine of contemporaneous and long-continued construction has no application. The courts of each State construe their own constitution, and decisions of courts of other States on the construction of their constitutions are of less importance than decisions on other questions, but when the constitutional provisions construed by the courts of another State are substantially like our constitution, the decision may appropriately be referred to. The constitution of Oregon contained a provision that no act should take effect until ninety days from the end of the session at which it was passed, "except in case of emergency, which emergency shall be declared in the preamble or in the body of the law." The legislature passed an act in which it was declared that it would greatly benefit the people of the State, that there was urgent necessity for it, "therefore this act shall take effect and be in force from and after its approval by the Governor." The question whether the statute complied with the requirements of the constitution for emergency acts came before the Supreme Court in *Biggs* v. *McBride,* 5 L. R. A. 115, and the court held the constitution was not complied with and the act did not take effect until ninety days after

the end of the session at which it was passed, because the emergency was not declared in the body or preamble of the act. When the emergency is required to be declared, although the act declare it is necessary that it go into effect immediately, if there is no fact, event or state or condition of affairs mentioned which the legislature determines creates an emergency, the act will not take effect as an emergency act. (25 R. C. L. 801, 802.) A few decisions of other States in point supporting the views we have expressed are cited in the brief of appellant, (see note to *Payne* v. *Graham*, (Me.) 7 A. L. R. 525,) but we do not deem a citation of them important, as we are unable, in any event, to construe our constitution to mean anything other than that to pass a law which will go into immediate effect as an emergency act the emergency must be expressed in the act, and the mere declaration that an emergency exists is not a compliance with the constitution.

A question involving the construction of a statute which bears some analogy to the question here involved has been determined by this court. Section 14 of chapter 121 of Hurd's Statutes of 1905 authorized the levy of an additional tax "in view of some contingency." We held the certificate of the highway commissioner was required to state that the increased levy was to meet a contingency and also state what the contingency was. *St. Louis, Alton and Terre Haute Railroad Co.* v. *People,* 224 Ill. 155; *People* v. *Elgin, Joliet and Eastern Railway Co.* 243 id. 546; *People* v. *Lake Erie and Western Railroad Co.* 248 id. 32.

We cannot hold the Securities act of 1919 went into effect before July 1 of that year without disregarding the plain meaning of the language of the constitution, and that we are not warranted in doing. This necessitates a reversal of the judgment, and it is accordingly reversed.

*Judgment reversed.*